CITY OF VALLEY JUNCTION, Appellee, v. THOMAS P. McCURNIN et al., Appellants.

**HIGHWAYS:** Establishment — Dedication — Evidence—Sufficiency.
1  Evidence reviewed, and held ample to establish the dedication of a highway by the three tenants in common.

**HIGHWAYS:** Establishment—Dedication—Acceptance—Sufficiency.
2  Unequivocal recognition by a city of a highway constitutes sufficient acceptance of the dedication thereof. Evidence reviewed, and held to establish such acceptance.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

SATURDAY, JUNE 23, 1917.

SUIT to enjoin the obstruction of an alleged street resulted in a decree as prayed. Defendants appeal.—*Affirmed.*

*N. E. Coffin* and *James A. Howe,* for appellants.

*L. L. Thompson* and *Parsons & Mills,* for appellees.

LADD, J.—I.  This is a suit to enjoin

1. HIGHWAYS: establishment: dedication: evidence: sufficiency.

the obstruction of an alleged highway by the erection of fences at each end of it.  The building of the fences is conceded by defendants, but they insist that they never dedicated the strip of land in controversy as a highway, and that, if dedicated, there was no acceptance.  One Murrow owned the northwest quarter of Section 11 in Township 78 North, Range 25 West of the 5th P. M., and lying between the boundaries of the cities of Valley Junction and Des Moines.  Through the settlement of Murrow's estate, title to said land, with the exception of the First Addition to Valley Junction, which had been platted and disposed of, passed to two of his daughters, Mrs. McCurnin and Mrs. Henry, and the husband of the former, Thomas P. McCurnin.  The corporate limits of Valley Junction were extended in 1911, so as to include the entire tract, and in 1912, the owners caused what is known as Murrow's Second Addition to be platted.  This was immediately north and east of the First Addition, in the southwestern part of the farm, and adjoining the settled portion of Valley Junction.  Hillside Avenue extended from the west line of the land, or Eighth Street, on the north side of the plat easterly to Fourth Street, on the eastern boundary thereof.  The street railway connecting the cities extends up Fifth Street, turning into Vine Street, east to Fourth Street, where it curves across to a right of way extending to the north, forming the eastern boundary of said Fourth Street.  This street is platted to a point 692 feet north of Vine Street.  The road in controversy runs from the end of Fourth Street, as platted, north, parallel with the street railway, and turns slightly north of east, extending to a point west of the concrete bridge over Walnut Creek in Grand Avenue and on the boundary between the cities, the right of way of the street railway company forming

the east and the south boundary of the road. A temporary way 40 feet wide began about 600 feet west of the city boundary and ran north and northeasterly to Grand Avenue, as originally laid out. The only question for our decision is whether defendants have dedicated the strip of land as a highway, and whether the plaintiff accepted such dedication prior to August 29, 1913, when said road was fenced in at the end of Fourth Street and immediately across the new road extending from Grand Avenue to the road north, known as the "River to River Road." The law with reference to the common-law dedication of a highway or street is fully settled, and only issues of fact are for our decision. In so far as Thomas P. McCurnin is concerned, the evidence is all but conclusive. In the early fall of 1912, he caused a fence to be constructed 66 feet west and north from that marking the right of way boundary, and also the road to be graded the entire way, and gutters to be plowed on either side. Formerly, Grand Avenue turned to the northwest, upon reaching the Chicago, Milwaukee & St. Paul Railway Company's track, and crossed Walnut Creek between 600 and 700 feet north and west of the present concrete bridge, to what is known as the "River to River Road." In the first place, the road in controversy turned north at a point about 600 feet west of such boundary, and ran north and then northeast to the River to River Road. McCurnin, with the aid of the engineer who laid out the addition, appeared before the officers of the city of Des Moines having control of such matters, and before those of the city of Valley Junction, and arranged that Grand Avenue be extended directly west over Walnut Creek, instead of veering to the northwest, as described above, and for the erection of a concrete bridge over said creek, and the construction of a road west of the creek from the end of Grand Avenue northwesterly to the River to River Road, and the abandonment of the old

road connecting the avenue with the River to River Road. In carrying this out, defendants conveyed to the city of Valley Junction a strip 66 feet wide for the new street from Grand Avenue to the River to River Road, and the city conveyed to defendants that portion of the abandoned road within its limits. Enough of the plat prepared by his engineer and exhibited to the officers of the respective cities and showing the situation is annexed to demonstrate the utter inconsistency of what was done with 'any course other than a design of establishing the road in controversy. Indeed, two of the councilmen of the plaintiff city testified that he stated before that body that he had laid out the road and given it to the public. The district court, after an accurate review of the legal questions involved and of the evidence, enumerated the matters, which, taken together, manifested the *animus dedicandi*:

  "(1)  The laying out of the road itself; (2) the grading of same; (3) the fencing of the road; (4) the fact that the width of the road was made 66 feet, the usual width of a street; (5) the paying for the grading of the road out of the common fund of the defendants; (6) the erecting of a sign 'To Des Moines,' near the connection of the road in controversy with Fourth Street in the city of Valley Junction; (7) the erection of the sign 'To Valley Junction,' near the intersection of the road in controversy with the Grand Avenue or River to River Road; (8) the erection of a large sign showing the Murrow's Second Addition plat along the roadway in controversy, on which plat were the words, 'To Des Moines;' (9) the plat of Murrow's Second Addition filed of record shows the beginning of the roadway in controversy; (10) the plat showing the change in Grand Avenue to location of the new bridge across Walnut Creek, etc., shows the road in controversy; (11) a three or four-foot cut was made in one place while grading the road; (12) the testimony of two members of the city coun-

cil of Valley Junction to the effect that Mr. McCurnin had said that he had graded the road and given it to the public; (13) the negotiations with the city council to secure the approval of the plat to Murrow's Second Addition; (14) the negotiations with the city council of Valley Junction with reference to the roadway extending from the new bridge across Walnut Creek in a northerly direction to the River to River Road; (15) the negotiations with the officials of the city of Des Moines with reference to changing Grand Avenue and the erection of the new bridge across Walnut Creek; (16) the selling of the greater portion of the lots in Murrow's Second Addition after the roadway in controversy was opened to the free use of the public in November, 1912, and the leaving of the same open until on or about August 29, 1913."

These facts, as we think, are fully established by the record, and lead to but one conclusion, and that is that McCurnin intended to dedicate to the public this way as a street or highway. True, he undertakes to minimize his negotiations for the changes made, denied having made the statements attributed to him by the two members of the city council, and explained that his purpose in laying out the road was to ascertain whether there was any demand for acreage tracts, and if so, in what size, and to be better able to bring them to public attention, and that he had no intention of permanently establishing a street or highway, and never mentioned such a matter to his wife or Mrs. Henry. Everything he did, however, indicates a purpose to dedicate, and what was done is more persuasive of what he then intended than is his subsequent explanation. A more reasonable theory is that what he did was with the intention of establishing a highway, but that this was abandoned upon discovery that there was no demand for acreage lots, rather than that the way was experimental, and only intended to ascertain whether there

was such demand.' Any other conclusion is inconsistent
with his negotiations for the straightening of Grand Ave-
nue.  What interest was this to him, but for the connec-
tion with the highway he had laid out?  In accomplishing
this, he conveyed more land than he received.  He says he
fenced the way to keep cattle out; why not allow the right
of way fence to serve this purpose, and employ gates, if
the way were private—if it were merely a private way?
There is a trite saying that "actions speak louder than
words," and it finds an apt illustration in this case.  A
careful examination of the record has convinced us that,
in so far as McCurnin is concerned, he intended to estab-
lish the road and dedicate it to the public.

II.  The only doubt we entertain is as to the other
tenants in common.  These joined in platting the subdi-
vision.  Mrs. Henry kept the accounts in detail of the re-
ceipts and expenses of the land.  She denied having con-
ferred any authority on McCurnin to dedicate or give
away any of the land.  But he was authorized to attend
to all matters in relation to surveying and platting the ad-
dition.  From the time the road was opened, about No-
vember 1, 1912, it was the most traveled highway between
the two cities, and, though not talked of to purchasers of
lots in the addition, it was open prior to the sale of most
of them, and, as a witness testified, "was one of the fea-
tures that made this a desirable location."  Mrs. Henry
and Mrs. McCurnin joined in paying the expense of fenc-
ing and grading.  That is, these were paid out of the com-
mon fund of the three owners, but it is not clear that they
were aware of this prior to the latter part of December.
The former testified that she knew nothing of the road un-
til December, 1912, when she was told that "it was put
through to see if there would be any more sales for acre-
age or of the land, and, if so, it would be made a perma-
nent road, and if not, it would be closed up, because we

had never made a deed;" that this information came from her husband; that she talked with McCurnin about negotiating for the conveyance of a strip of land for a street and receiving one back for land then used for that purpose, and about the changes incident thereto, including all about the construction of the concrete bridge, but she left the details to McCurnin, and knew nothing of the annexed plat or of its exhibition to the city authorities. Mrs. Mc- Curnin was in ill health at the time of the trial, but, in the absence of other evidence, it is to be inferred that the payment for the fence and grading was with her approval, and that, in joining in the conveyance to the plaintiff city and in accepting the deed from it, which is to be presumed from its recording, she acted with knowledge of the purposes being accomplished thereby. The road had been continuously and extensively traveled, precisely as though a public highway, since November 1st previous, and it is impossible to explain these conveyances and the straightening out of Grand Avenue and procuring the concrete bridge, as consistent with any other attitude than the permanent establishment of the road in controversy. On what other theory could these defendants have been especially interested in straightening Grand Avenue, or the construction of the bridge, or the change of the route, or the temporary continuance of the connection of the road next to the street railway with the River to River Road, until the proposed improvements and changes might be made? But for this road along the street railway, it was better for them that Grand Avenue turn to the northwest, and that the bridge be farther to the north; for then the street through their land would be along the right of way of the Chicago, Milwaukee & St. Paul Railway Company, and only part of the diagonal portion taken from their land, whereas the new street is almost entirely from their land, and a considerable area cut off thereby, lying be-

tween the street and said right of way. Were these de-
fendants about doing good merely, without taking into ac-
count any advantages to themselves? Surely, McCurnin,
in exhibiting the map to Carss, the city engineer,. and My-
erly, of the city council of Des Moines having charge of
the streets, represented an extension of Grand Avenue to
Valley Junction, and Mrs. Henry and Mrs. McCurnin, in
executing and accepting the deeds, so did for the purpose
of better connecting the road laid out by McCurnin with
one of the main thoroughfares of the city of Des Moines;
and we are of opinion that, even though they may not have
known of McCurnin's action in laying out the street orig·
inally, the subsequent payment of their portion of the ex-
penses incurred, and the execution and exchange of deeds
in connection with what he did, in view of the scope of his
authority, satisfactorily evidence their confirmation of all
previously done, and establish the *animus dedicandi* on the
part of the three tenants in common.

III. Was there an acceptance by the
2. Highways: es- plaintiff? No resolution was adopted, and
tablishment:
dedication: ac- this was not necessary. *Byerly v. City of*
ceptance: suffi-
ciency. *Anamosa*, 79 Iowa 204; *Hunter v. City of*
*Des Moines*, 144 Iowa 541. The road was put in such con-
dition by McCurnin (and he was required to grade the
streets of the addition as a condition precedent to its ap-
proval by the city council of Valley Junction) that little
additional was necessary, but it was dragged twice, and a
little grading done thereon by the city, and this, in view
of its general and beneficial use, we are inclined to regard
as sufficient to warrant a finding of acceptance. All essen-
tial is that the street be unequivocally recognized as such by
the city, and what was done surely did this much. Where a
way is convenient and beneficial to the public, slight evi-
dence, if amounting to recognition, as above indicated, will
suffice in establishing acceptance. *Incorporated Town of*

*Cambridge v. Cook*, 97 Iowa 599, and cases collected. We are of opinion that the street 66 feet wide, extending from the boundary of the two cities to the end of Fourth Street of Valley Junction, was dedicated by defendants and accepted by that city, and that the court rightly enjoined them from obstructing the same.—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.